## Watts, Appellant, v. Borough of Plymouth.

*Negligence—Municipalities—Streets — Defects — Pedestrians — Crossing between crossings—Contributory negligence—Nonsuit.*

1. A pedestrian has the right to cross over a public street at any point he elects, but where a convenient crossing has been provided, it is his duty to adopt such crossing unless he have reasonable ground for rejecting it. Where he does reject it and adopts another way, for no adequate reason, he assumes the risk of every danger arising out of municipal neglect that would have been avoided had he used the established crossing.

2. If a street crossing is obstructed or in a dangerous condition so as to deter an ordinarily prudent man from using it he may walk elsewhere.

3. Ordinarily the question whether an excuse advanced for rejecting a crossing is reasonable or not is for the jury, but where no reason is expressed and no conclusion is derivable from the facts and circumstances except that the choice of the way was inconsiderately and negligently made, it is the duty of the court to so pronounce.

4. In an action against a municipality to recover damages for

injuries sustained by a pedestrian from a fall caused by stepping in a hole while crossing a street, a compulsory nonsuit was properly entered where it appeared that the plaintiff attempted to cross the street at night at a point where there was no defined pathway, that it was so dark that she could not see the ground before her, and her arms were so encumbered that she could make little or no use of them in defending herself against possible accident; although plaintiff knew that by passing down the side walk a distance of one hundred and fifty or two hundred feet she could reach a public crossing which was well lighted and afforded a safe way.

Argued April 12, 1916. Appeal, No. 111, January T., 1916, by plaintiff, from judgment of C. P. Luzerne County, February T., 1911, No. 382, refusing to take off compulsory nonsuit in case of Joseph Watts and Anna Watts v. Borough of Plymouth. Before POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BOYLE, J.

The facts appear by the opinion of the Supreme Court.

The lower court entered a compulsory nonsuit which it subsequently refused to take off. Plaintiff appealed.

*Error assigned,* among others, was in refusing to take off the nonsuit.

*Paul J. Sherwood,* for appellants.—The defendant was guilty of negligence in maintaining the hole in the street: Kraut v. Frankford & Southwark Philadelphia City Pass. Ry. Co., 160 Pa. 327; Toglatti v. Carrick Borough, 61 Pa. Superior Ct. 244; Cox v. Pres., Directors & Co. of the Westchester Turnpike Road, 33 Barb. 419; Sisson v. Philadelphia, 248 Pa. 140.

The plaintiff was free from contributory negligence: Lewis v. Wood, 247 Pa. 545; Thompson v. Bridgewater, 24 Mass. 187; Cox. v. Westchester Turnpike Co., 33 Barb. (New York) 414.

*J. Q. Creveling,* with him *Charles Kuschke,* for appellee.—The plaintiff was contributorily negligent: Hentz v. Borough of Somerset, 2 Pa. Superior Ct. 225; Buzby v. Philadelphia Traction Co., 126 Pa. 559; Del., Lack. & Western R. R. Co. v. Cadow, 120 Pa. 559; Tolan v. Philadelphia, 35 Pa. Superior Ct. 311; Burns v. City of Bradford, 137 Pa. 361; Haven v. Pittsburgh & Allegheny Bridge Co., 151 Pa. 620.

OPINION BY MR. JUSTICE STEWART, October 2, 1916:

Plaintiff received her injury while attempting to cross over the main street in the Borough of Plymouth to a point alongside the track of an electric street railway occupying the middle of the street where she intended to board an approaching car. The point where she expected to take the car was not a scheduled stopping place, but, because of greater convenience it afforded to shoppers, cars were allowed to stop at that point, on signal, to receive passengers. The scheduled stopping place was but a short distance above, and there was there a public crossing. The accident occurred between six and seven o'clock on the evening of 9th of October, 1909. The plaintiff had been trading in one of the stores facing on this particular street, almost directly opposite the point where she expected to take the car. She left the store carrying three packages of merchandise in her right arm, and a pail containing other merchandise with her left hand. When she stepped from the store and reached the pavement, it was dark, too dark to permit of her seeing what was immediately about her, but, being entirely familiar with her surroundings from frequent visits to this store, and knowing well of the existence of a public crossing a short distance above, and observing from where she stood on the pavement that the crossing was lighted, for no apparent reason other than to avoid the necessity of following the pavement until she reached the crossing, encumbered as she was she stepped from the pavement into the street. She had proceeded but a little way when

she stepped into a depression in the street and fell upon the pail she was carrying, thereby receiving the injury of which she complains.   In the immediate neighborhood where she fell there were several depressions in the street, but into which one of these the plaintiff stepped is a fact not clearly disclosed.   On cross-examination she admitted that she had often alighted from the car at its regular stopping place; that in going to and from the store on such occasions she had walked up and down the sidewalk leading to and from the store, and that it and the crossing together made a perfectly safe way for her to travel.   At the conclusion of the evidence a nonsuit was granted, and the appeal is from the refusal of the court to take it off.

Pedestrians are not restricted to the use of established street crossings when they attempt to pass from one side of the street to the other.   They have a right to cross at whatever point they elect.   But, since it is matter of common knowledge that crossings where they exist have been constructed for their exclusive accommodation and use, and that the individual pedestrian is less exposed to accident in using the crossing than when he attempts to cross the street elsewhere, it is only reasonable to expect him to use the crossing, except as he has sufficient ground to reject it.   When without reasonable excuse he does reject it and adopt another way, he takes upon himself the risk of every danger arising out of municipal neglect that would have been avoided had he used the established crossing.   The rule of law governing in such case is thus stated by Judge DILLON in his work on Municipal Corporations, Section 1008: "Street crossings are constructed for the use of foot passengers; but if these happen to be obstructed or to be in such a dangerous condition as to deter an ordinarily prudent man from using them, then one may walk elsewhere.   If he does so, however, without sufficient reason, and is injured, his injury cannot be imputed to the negligence of the city."   Ordinarily it must be for the jury to decide

whether an excuse advanced for rejecting a crossing is reasonable or otherwise; but cases arise, and this is one of them, where no reason at all is expressed, and no conclusion is derivable from the facts and circumstances of the case, except that the choice of way was inconsiderately and negligently made. When this appears, it is the duty of the court to so pronounce.

The plaintiff charges culpable negligence on the part of the municipality in allowing the depression into which she stepped to exist. Let the negligence be conceded— yet this concession is so manifestly unfair to the defendant in the light of plaintiff's own testimony that we reluctantly make it even for the purpose of argument, for she testified, notwithstanding several of her witnesses speak of a number of more or less serious depressions in the street at this particular point, that she was entirely familiar with the place, having repeatedly crossed the street at the same place, and had never noticed any depressions, and had no reason to believe any existed on the way she had adopted for her crossing. But let it be so. What she attempted to do was to cross over a public street at night time where there was no defined pathway, when it was so dark that she could not see the ground before her, and with her arms so encumbered that she could make little or no use of them in defending herself against possible accident. She chose this way knowing that by passing down the sidewalk a distance of one hundred and fifty or two hundred feet she could reach a public crossing which she was familiar with, well lighted and which afforded, as she admits, a safe way. Even admitting that she did not know of the existence of the defect she encountered in the highway, there was more than enough in the circumstances under which she advanced upon the street to put her on guard, and charge her with voluntarily and unnecessarily undertaking to test the safety of a public street when she knew that the dangers such as she there encountered and caused her injury would be avoided by adopting an-

other and entirely convenient course which the municipality had provided for pedestrians. The nonsuit in the case was properly entered. The judgment is affirmed.