Argued April 26, affirmed June 26, 1928.

MAY BUTLER, ADMINISTRATRIX, *v.* CITY OF McMINNVILLE.

(268 Pac. 760.)

For appellant there was a brief over the name of *Mr. Frank S. Grant*, with oral arguments by *Mr. R. L. Conner*, City Attorney, and *Mr. Jay Bowerman*.

For respondent there was a brief over the name of *Messrs. Vinton & Tooze*, with an oral argument by *Mr. Walter L. Tooze*.

BELT, J.—Administratrix of the estate of Vandalia Williams Green, deceased, prosecutes this action to recover damages for personal injuries sustained by decedent through the alleged negligence of the defendant. On November 7, 1925, at about 5:30 in the evening, decedent was going north on the west side of "G" Street in the City of McMinnville. Upon reaching about the middle of the block she left the sidewalk, traveling diagonally across the paved street and over a parking strip on the east side thereof. While crossing the park strip she stepped into a water meter-box installed and maintained by the defendant city. This box was located about 18 inches from the outer edge of the sidewalk and approximately 52 feet south of the intersection of "G" and Second Streets. According to her testimony there was no cover or lid on the box and she was prevented from seeing it on account of grass which had grown up around it about six or eight inches high. She says that the opening of the box was covered with two or three small rotten sticks or boards.

It is charged that the defendant was negligent as follows: (1) in failing to place upon the meter-box a cover which could not be easily displaced or removed; (2) in suffering and permitting the cover to become rotten and broken into pieces, thereby leaving the opening in the box without protection to those who might walk over it. Defendant denies that it was negligent and alleges affirmatively that whatever injuries, if any, deceased sustained by stepping into this meter-box were due to her own carelessness and negligence. The city contends that the parking strip is not a place designated for pedestrians to travel and that it is under no legal obligation to keep the strip in a reasonably safe condition for such use. In other words, the city says that, when a pedestrian unnecessarily leaves the way designated for travel and goes upon a park strip set aside for lawns, flowers and trees, he assumes the risk of being injured. The defendant further relied as a defense upon Section 215 of its charter, which provides:

"Section 215. *Liability of City for Damages.* The City of McMinnville shall not in any event be liable in damages to any person for any injury caused by any defect or dangerous place at or in any sidewalk, crosswalk, street, alley, bridge, public grounds, public buildings, or ditch, unless said city shall have had actual notice of such defect or dangerous place and a reasonable time thereafter in which to repair or remove such defects or dangerous places before the happening of such accident or injury."

That part of the answer setting forth the above charter provision was, on motion of the plaintiff, stricken for the reason that it had no application.

The trial court submitted to the jury the question as to whether defendant was negligent in the installation and maintenance of the meter-box and also as to whether decedent was guilty of contributory negligence precluding a recovery. On these issues a verdict and judgment was had for the plaintiff in the sum of $1,050. Defendant appeals.

Was the defendant city under legal obligation to the decedent in the installation and maintenance of this meter-box? Did it violate its obligation? Was she injured as a result thereof? These are the questions to which our attention is first directed. Unquestionably the city, in the exercise of its governmental functions, had the right to set aside a certain portion of the street for purposes of ornamentation. It was within its province to designate the ways for pedestrian and vehicular travel. It was also clearly within its rights in placing water meter-boxes on parking strips, although, in so doing, it was acting in its proprietary capacity. In determining, therefore, whether the city was negligent, we should apply to it the rules of conduct which would govern a private corporation. It is well settled here, as elsewhere, that, when a municipality undertakes to supply water to its citizens for profit, it is acting in its proprietary capacity as distinguished from its governmental functions: *Twohy Bros. Co.* v. *Ochoco Irr. Dist.* (on rehearing), 108 Or. 38 (210 Pac. 873, 216 Pac. 189), and cases therein cited. We take it, therefore, that the trial court was right in rejecting, as immaterial, the charter provision above quoted in reference to actual notice and the right to a reasonable time in which to remedy defective conditions. What if a private corporation were defendant in the instant case? Would it be heard to

say that the board of directors had passed a by-law relieving the corporation from liability unless it had actual notice of the defective condition of the meter-box? Furthermore, can the city be permitted to say that it did not have notice of the kind of meter-box which it installed? We are not dealing with a situation where the condition was brought about by the act of a third person. We conclude that the city was under obligation to exercise reasonable care in the installation and maintenance of this meter-box.

■■■ If the testimony offered on behalf of the plaintiff is to be believed, the city was negligent. To cover a hidden pitfall with a few rotten sticks or boards, even at a place where pedestrians usually do not travel, will not meet the standard fixed by law. It is true that evidence was offered by the city tending to show that a suitable and proper cover was on the meter-box about three weeks prior to the accident. The jury might have drawn therefrom the reasonable inference that the meter-box was in good condition at the time in question, but, unfortunately for the city, it failed so to do. It is not for this court to weigh the evidence.

■■■ Can we say, as a matter of law, that decedent was guilty of contributory negligence in crossing this park strip and stepping into the meter-box, under the circumstances as disclosed by the record? Ordinarily the question of contributory negligence is for the jury. It is only when but one reasonable conclusion can be reached from a given state of facts that a court will determine the question. We measure the conduct of this woman, who was about seventy years of age at the time she was injured,

by what an ordinarily prudent person would have done under similar circumstances. There was no statute or ordinance forbidding pedestrians to cross parking strips. She was not a trespasser, but was at a place where she had a strict legal right to be. It is true that a park strip was not designated for the use of pedestrians, but can it be said, as a matter of law, that it would be unreasonable on the part of the city to anticipate that pedestrians would occasionally cross it? Civic pride usually restrains people from crossing beautiful lawns and flower-beds, but when, as in the instant case, park strips are not so beautified, it is not unusual for persons of ordinary caution and prudence to cross them in order to save time and distance. Of course, a higher degree of care must be exercised in walking over a strip on which there are usually obstructions. It will not do to travel in the same manner as if one were on a smooth pavement or concrete walk. Care commensurate with the danger involved is a fundamental rule. Some courts take the extreme view as urged by appellant in this case such as announced in *Watts* v. *Plymouth,* 255 Pa. 185 (99 Atl. 470, 3 A. L. R. 1110), *Alline* v. *Le Mars,* 71 Iowa, 654 (33 N. W. 160), and *Mitchel* v. *Richmond,* 107 Va. 193 (57 S. E. 570, 12 Ann. Cas. 1015, 11 L. R. A. (N. S.) 1114), but, in our opinion, these authorities are not in harmony with the better reasoned cases. Supporting the proposition that the alleged contributory negligence of the decedent would, under the circumstances, be a question for the jury, see *Barnesville* v. *Ward,* 85 Ohio St. 1 (96 N. E. 937, Ann. Cas. 1912D, 1234, 40 L. R. A. (N. S.) 94); *City of Miami* v. *Finley,* 112 Okl. 97 (240 Pac. 317); *City of Bir-*

*mingham* v. *Mauzey*, 214 Ala. 476 (108 South. 382);
*McDonald* v. *City of St. Paul*, 82 Minn. 308 (84
N. W. 1022, 83 Am. St. Rep. 428); *Fockler* v. *Kansas
City*, 94 Mo. App. 464 (68 S. W. 363); *Riley* v.
*Kansas City*, 161 Mo. App. 290 (143 S. W. 541);
*City of Waco* v. *Watkins* (Tex. Civ. App.), 292
S. W. 583; *City of Augusta* v. *Tharpe*, 113 Ga. 152
(38 S. E. 389); *Larsen* v. *City of Sedro-Wooley*, 49
Wash. 134 (94 Pac. 938). It is not expected—nor
does the law require—that a city shall maintain a
park strip in the same condition for travel as it
would a paved street or sidewalk. There are cer-
tain obstructions incidental to its use, such as elec-
tric light poles and sign-boards, which may right-
fully be placed in a portion of the street set aside
and devoted to purposes of ornamentation. He who
sees fit to cross a park strip must reasonably antici-
pate that his way may be thus obstructed. However,
in the absence of notice to the contrary, an ordinarily
prudent person would not anticipate that a water
meter-box would be left without a cover or lid
thereon. A city has no right to maintain any-
thing in the nature of a pitfall, trap, snare or like
obstruction, whereby the traveler yielding to the im-
pulse of the average person to cut across a corner
in a hurry may be injured, nor will it be permitted
to allow others to do so.

Summarizing, we cannot say that it is negligence
*per se* for the plaintiff to have crossed this strip
at a point other than where the usual or designated
passageways were provided. Whether the plaintiff
exercised due care was, under the clear and accurate
instructions of the trial court, a question of fact for

the jury to determine. Its findings as expressed in the verdict are conclusive.

The judgment of the lower court is affirmed.

AFFIRMED.

BEAN and COSHOW, JJ., not sitting.